# Matter of Maria C. YAURI, Respondent

File A071 610 438 - Los Angeles, California

*Decided October 28, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  With a narrow exception not applicable to this case, the United States Citizenship and Immigration Services ("USCIS") has exclusive jurisdiction to adjudicate an arriving alien's application for adjustment of status under 8 C.F.R. § 245.2(a)(1) (2009) and agrees that it retains jurisdiction to adjudicate the application even where an unexecuted administratively final order of removal remains outstanding.

(2)  The Board of Immigration Appeals generally lacks authority to reopen the proceedings of aliens under final orders of exclusion, deportation, or removal who seek to pursue relief over which the Board and the Immigration Judges have no jurisdiction, especially where reopening is sought simply as a mechanism to stay the final order while the collateral matter is resolved by the agency or court having jurisdiction to do so.

(3) With regard to untimely or number-barred motions to reopen, the Board will not generally exercise its discretion to reopen proceedings sua sponte for an arriving alien to pursue adjustment of status before the USCIS.

FOR RESPONDENT:  Stuart I. Folinsky, Esquire, Los Angeles, California

AMICUS CURIAE:[1]  Mary A. Kenney, Esquire, Washington, D.C.

FOR THE DEPARTMENT OF HOMELAND SECURITY: James M. Left, Senior Attorney

BEFORE:  Board Panel:  HOLMES and HESS, Board Members; KENDALL CLARK, Temporary Board Member.

HOLMES, Board Member:

This matter was last before the Board on December 2, 2003, when we entered the final administrative order in these removal proceedings, dismissing the respondent's appeal from the Immigration Judge's April 30, 2002, decision.  On March 24, 2008, over 4 years after that final order, the

---

[1]  We acknowledge and appreciate the very helpful briefs submitted by the parties and by amicus curiae, representing the American Immigration Law Foundation.

respondent filed an untimely motion to reopen to pursue an application for adjustment of status.  With certain exceptions not applicable to the respondent's motion, a motion to reopen in any case previously the subject of a final decision by the Board must be filed no later than 90 days after the date of that decision.  Section 240(c)(7)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(7)(C)(i) (2006); 8 C.F.R. § 1003.2(c)(2) (2009).  The respondent's motion is therefore untimely.  The Department of Homeland Security ("DHS") filed an opposition to the motion to reopen.

The respondent concedes that her motion is untimely, but she nevertheless urges that sua sponte reopening by the Board is warranted because of a change of law and because exceptional circumstances are present in her case.  8 C.F.R. § 1003.2(a); *see also Matter of G-D-*, 22 I&N Dec. 1132 (BIA 1999); *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997).  She acknowledges that she is an "arriving alien" who must pursue her application for adjustment of status with the United States Citizenship and Immigration Services ("USCIS"), an agency within the DHS.  However, she contends that the 2006 regulatory changes affecting this group of adjustment applicants and the USCIS's rejection of her adjustment application necessitate the reopening of the removal proceedings against her.  8 C.F.R. §§ 1.1(q), 1001.1(q) (2009) (defining the term "arriving alien"); 8 C.F.R. §§ 245.2(a)(1) (setting forth the jurisdiction of the USCIS over adjustment applications for arriving aliens), 1245.2(a)(1)(ii) (2009) (setting forth the limited circumstances in which an Immigration Judge will have jurisdiction over the adjustment application of an arriving alien); *see also* Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27,585-92 (May 12, 2006) (interim rule implementing changes to the regulations and providing a process through which arriving aliens may apply for adjustment of status).  She argues that we should reopen her removal proceedings and continue them indefinitely so that she does not have an outstanding order of removal pending against her while she pursues her application before the USCIS.

On June 1, 2009, after the submission of supplemental briefs in this matter, and after the issues raised in the respondent's motion had been considered by the Board, the DHS filed a separate motion to reopen and terminate these removal proceedings on the basis that the USCIS had adjudicated the respondent's adjustment of status application and had granted that application on February 25, 2009.  We will address this separate motion later in this decision, but first we will adjudicate the respondent's pending motion to reopen.  The grant of lawful permanent resident status to the respondent does not obviate the need for the Board to provide guidance to the Immigration Judges, the parties, and the general public with regard to recurring issues

presented in her motion, which otherwise are often overcome by events before they can be separately addressed.

## I.

As a preliminary matter, aside from motions to reconsider, motions before the Board fall into three broad categories: (1) motions to remand that are filed in the course of ongoing, "open" proceedings before the Board; (2) motions to reopen proceedings that satisfy the time and number requirements set forth in 8 C.F.R. § 1003.2(c)(2); and (3) motions that do not meet the time and number requirements imposed by 8 C.F.R. § 1003.2(c)(2). *See also* sections 240(c)(7)(A), (C)(i) of the Act. Each category of motion has its own separate requirements that must be satisfied to allow or warrant reopening. We note this at the outset because it is not unusual for these separate filing requirements to be inadequately addressed or simply overlooked in motions pending before the Board, and perhaps at times not adequately addressed in the adjudication of the motion by the Board.

Where motions do not meet the filing requirements of 8 C.F.R. § 1003.2(c)(2) and do not qualify for a statutory or regulatory exception to those requirements, proceedings can only be reopened under the Board's sua sponte authority. 8 C.F.R. § 1003.2(a). We emphasize that untimely motions to reopen to pursue an application for adjustment of status, even for cases that do not involve an "arriving alien," do not fall within any of the statutory or regulatory exceptions to the time limits for motions to reopen before the Board and will ordinarily be denied.[2] Sections 240(c)(7)(C)(ii)-(iv) of the Act; 8 C.F.R. § 1003.2(c)(3). The only applications for adjustment of status that are specifically excepted from the motion time limits are those that involve a self-petition by a battered spouse, child, or parent of a United States citizen or lawful permanent resident. Section 240(c)(7)(C)(iv) of the Act. The respondent does not assert that she falls within this exception, or any other exception to the time limits, and her motion reflects that the visa petition was filed on her behalf by her United States

---

[2] The parties have raised various arguments regarding the applicability of the Board's decision in *Matter of Velarde*, 23 I&N Dec. 253 (BIA 2002), to the respondent's case. However, *Velarde* involved a *timely* motion to reopen before the Board, and that decision listed the timely filing of a motion as the first criterion for the reasoning of that decision to apply. *Id*. at 256. The respondent's motion is not timely. Moreover, the principles set forth in *Velarde* relate only to unadjudicated marriage-based visa petitions, whereas the visa petition at issue in this case was filed on the respondent's behalf by her United States citizen daughter. Thus, *Velarde* has no applicability to the respondent's case.

citizen daughter in July 2007, over 3½ years after the Board's final order in this case. The respondent's motion to reopen therefore turns on whether sua sponte reopening is warranted. 8 C.F.R. § 1003.2(a); *see also Matter of G-D-*, 22 I&N Dec. 1132; *Matter of J-J-*, 21 I&N Dec. 976.

## II.

We also find it necessary to address whether the Board or the Immigration Judge has jurisdiction over the respondent's underlying adjustment application and, if not, whether the USCIS has jurisdiction to adjudicate the adjustment application of an arriving alien who is under a final order of removal. This question arises in the context of regulations promulgated in May 2006, which repealed an earlier regulation that barred "arriving aliens" from applying for adjustment of status and conferred exclusive jurisdiction on the USCIS to adjudicate adjustment applications filed by arriving aliens, with the limited exception of adjustment applications filed by arriving aliens who had been paroled into the United States to pursue a previously filed adjustment application. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(ii); 71 Fed. Reg. at 27,591-92. The respondent does not contend that she falls within the limited exception under which the Immigration Judge would have jurisdiction over her adjustment application, and the record reflects that she was not paroled into the United States to pursue a previously filed adjustment application. She did, however, present evidence that the USCIS rejected the adjustment application that she had filed in July 2007. The USCIS rejected the application because a warrant of deportation had been issued against the respondent in 2004, and she was therefore under removal proceedings before the Executive Office for Immigration Review, of which the Board is the ultimate decision-making body.

Given the apparent confusion regarding the USCIS's jurisdiction under the regulations to adjudicate the respondent's adjustment application, the Board requested supplemental briefing by the parties to specifically address this question. The parties provided supplemental briefing, and a brief was also filed on the respondent's behalf by amicus curiae. In these briefs, the parties have stated their agreement that, under the regulations promulgated on May 12, 2006, jurisdiction over the respondent's adjustment application lies with the USCIS, and not with the Immigration Judge or the Board. Moreover, the DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien. In the amicus brief filed by counsel from the American Immigration Law Foundation, USCIS jurisdiction over such applications was acknowledged. It was also acknowledged that most local offices of the USCIS recognize

their jurisdiction or, in cases where they initially failed to do so, the issue of jurisdiction was resolved once the regulations were brought to that office's attention.

Upon consideration of the supplemental briefs, we find no dispute over the question of which agency has jurisdiction to adjudicate the respondent's adjustment of status application. Jurisdiction lies with the USCIS under the applicable regulations, because the respondent is an arriving alien who does not fall within the limited exception that would confer jurisdiction over the application on the Immigration Judge or the Board. 8 C.F.R. § 245.2(a)(1). Moreover, we emphasize that the existence of a final order of removal does *not* preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status.

## III.

Given that the Board has no jurisdiction over the underlying application, the question arises whether we can or should reopen proceedings in which a final administrative order has been entered while such an application is being pursued before the USCIS. We have long been of the view that administratively *final* exclusion, deportation, or removal proceedings should not be reopened for matters over which neither the Immigration Judge nor the Board has jurisdiction, and that referencing the absence of such jurisdiction was a rational basis in itself to decline to reopen proceedings. *See, e.g.*, *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996) (declining to reopen exclusion proceedings for adjustment of status where the Immigration Judge did not have jurisdiction in exclusion proceedings over an adjustment of status application under the applicable regulations). Nevertheless, some courts of appeals have recently remanded cases in which the Board denied motions solely on the basis of the lack of jurisdiction over the underlying applications. *See, e.g.*, *Kalilu v. Mukasey*, 548 F.3d 1215 (9th Cir. 2008); *Sheng Gao Ni v. Bd. of Immigration Appeals*, 520 F.3d 125 (2d Cir. 2008); *Potdar v. Keisler*, 505 F.3d 680 (7th Cir. 2007), *rev'd on reh'g sub nom. Potdar v. Mukasey*, 550 F.3d 594 (7th Cir. 2008).

In *Sheng Gao Ni v. Board of Immigration Appeals*, 520 F.3d at 130, for example, the United States Court of Appeals for the Second Circuit stated that the "likely purpose" of a such an adjustment of status motion filed in removal proceedings "was to permit petitioners to press their adjustment applications before the USCIS without remaining subject to final orders of removal." The court ruled that a "rote recital of a jurisdictional statement—even if technically accurate—does not adequately discharge the BIA's duty to 'consider the facts of record relevant to the motion' and provide a 'rational explanation' for its

ruling." *Id.* at 129-30 (quoting *Melnitsenko v. Mukasey*, 517 F.3d 42, 50 (2d Cir. 2008)). It remanded the case for the Board to reconsider the issue and provide adequate reasons for denying the motion.

In *Kalilu v. Mukasey*, 548 F.3d at 1218, the Ninth Circuit concluded that the opportunity that the new regulation affords for an arriving alien in removal proceedings to establish his eligibility for adjustment of status "is rendered worthless where the BIA . . . denies a motion to reopen . . . that is sought in order to provide time for USCIS to adjudicate a pending application." The Ninth Circuit further opined that, without reopening, an alien with a prima facie valid Petition for Alien Relative (Form I-130) or an adjustment application pending before the USCIS could be removed and, if removed, his or her adjustment application would be deemed abandoned. *Id.*

Given these decisions, we will attempt to more fully explain our general position regarding motions to reopen proceedings that involve applications for relief or other matters over which neither the Board nor the Immigration Judge has jurisdiction.

To the extent that these decisions from the circuit courts can be read to address respondents who are under administratively final orders of removal, the decisions appear to indicate that the Board should be considering whether our proceedings should be used as a vehicle, in effect, to "stay" execution of the administratively final order of exclusion, deportation, or removal while the arriving alien's adjustment application is resolved by the USCIS.[3] This presents the question whether the Board can or should exercise its discretion

---

[3] The Ninth Circuit, in which this case arises, held in *Kalilu v. Mukasey*, 548 F.3d at 1217-18, that the Board abused its discretion in denying "solely on jurisdictional grounds" an arriving alien's motion to reopen to seek adjustment of status. In our decision, we had determined that reopening and a remand were unwarranted because jurisdiction over any adjustment application that the alien might file resided exclusively with the USCIS. However, we had not discussed whether reopening could or should be granted in order to "stay" the alien's removal while the USCIS resolved his adjustment application on its merits. Consequently, we do not view the Ninth Circuit's subsequent reversal as foreclosing us from now engaging in an examination of the extent of our authority to effectuate a "stay" through the reopening of proceedings, although we acknowledge and will herein address the court's above-cited expression of concern about the potential ramifications of denying reopening under such circumstances. Additionally, *Kalilu* involved a timely motion to reopen (indeed, the motion apparently had been filed during the pendency of a Board appeal and therefore was actually a pre-final-order motion to remand), as well as circumstances that the court found to be governed by *Matter of Velarde*, 23 I&N Dec. 253. *Kalilu v. Mukasey*, 548 F.3d at 1218. In contrast, in this case the respondent's motion to reopen was untimely (as further discussed *infra*), and *Velarde* is inapposite. *See supra* note 2.

to reopen proceedings to effectively grant such a "stay" of a final order while the alien pursues an independent adjustment of status application with the USCIS.[4]

We do not view the Board's authority to consider stays of execution of final orders, which we have been granted under Federal regulations, to extend this far. In particular, we have been granted limited stay authority under the regulations, which is almost exclusively tied to pending motions before the Board. 8 C.F.R. § 1003.2(f). Under that authority, if there is no automatic stay under the regulations, we may determine whether to grant a stay of execution of the final deportation or removal order while we consider the motion that is pending before us. *Id.* Likewise, an Immigration Judge also has authority to stay execution of a final order while a motion is pending before the Immigration Court. 8 C.F.R. § 1003.23(b)(1)(v) (2009). The stay authority granted to the Board and Immigration Judges does not provide general authority to grant stays of administratively final orders in conjunction with matters over which we have no authority. Rather, the limited stay authority provides the opportunity to stay proceedings while a pending motion is adjudicated. That stay authority also terminates upon adjudication of the pending motion.

It is our understanding of the law that if an alien under a final order of exclusion, deportation, or removal is seeking some form of relief from a third party[5] over which the Immigration Judges and the Board lack jurisdiction, the question whether the alien is either entitled to a stay of removal or warrants a stay as a matter of discretion while such application or request is pending is not within our jurisdiction. Any stay request should go to the agency or court that does have jurisdiction over the matter. In this case, the parties agree that the USCIS has jurisdiction over the respondent's adjustment application, and her request for a stay should therefore go to the DHS. 8 C.F.R. §§ 241.6(a), 1241.6(a) (2009).[6] If an arriving alien under

---

[4] In our view, whether phrased in terms of "staying" removal, or "lifting" an order of removal, or reopening the proceedings to provide time for the USCIS to adjudicate a pending application without the alien "being subject to a final order of removal," the actual remedy sought is a stay of removal pending adjudication of an application by the USCIS. *See, e.g.*, *Kalilu v. Mukasey*, 548 F.3d 1215; *Sheng Gao Ni v. Bd. of Immigration Appeals*, 520 F.3d 125; *Potdar v. Keisler*, 505 F.3d 680.

[5] In this instance, jurisdiction over the matter at issue is with the USCIS. However, parties could raise similar arguments with regard to matters pending in other forums.

[6] In its supplemental brief, the DHS outlines the process for obtaining a stay of the final removal order, as well as the process for obtaining deferred enforcement of the outstanding removal order. The DHS also points out that the respondent did not present any evidence

(continued...)

a final order of removal has the right to remain in the United States to pursue an adjustment application, proceedings should not need to be reopened to protect it. On the other hand, if the alien does not have such a right, then the discretion to allow him or her to remain in the United States until the application is adjudicated lies, if at all, with the agency or court having jurisdiction over the application, here the DHS. The DHS also has its separate authority to grant a respondent deferred action in the exercise of its prosecutorial discretion, which is not subject to review by the Board or the Immigration Judges. *See Matter of Quintero*, 18 I&N Dec. 349, 349-50 (BIA 1982); *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001); *Matter of Singh*, 21 I&N Dec. 427, 433 (BIA 1996).

Accordingly, we conclude that we have not been granted authority to reopen the proceedings of respondents who are under a final administrative order of removal to pursue matters that could affect their removability if we have no jurisdiction over such matters. This is especially so where reopening is sought simply as a mechanism to stay a final order of removal while the collateral matter is being resolved.

## IV.

Finally, and separately from any question of jurisdiction, with regard to untimely or number-barred motions to reopen, we conclude that sua sponte reopening of exclusion, deportation, or removal proceedings pending a third party's adjudication of an underlying application that is not itself within our jurisdiction ordinarily would not be warranted as a matter of discretion. 8 C.F.R. § 1003.2(a); *see also Matter of G-D-*, 22 I&N Dec. 1132; *Matter of J-J-*, 21 I&N Dec. 976.[7]

As a practical matter, Immigration Judges and the Board have limited and finite adjudicative and administrative resources, and those resources are best allocated to matters over which we do have jurisdiction. Among the costs of reopening final proceedings in cases such as the one before us, where we have no jurisdiction over the underlying relief requested, are the practical and administrative difficulties associated with maintaining open cases that would rely on outside considerations and would become part

---

(...continued)

that she attempted to request a stay from the DHS, or that such a request was denied by that agency.

[7] The respondent also urges that the Board should reopen proceedings sua sponte based on a change in law. *Matter of G-D-*, 22 I&N Dec. 1132. However, because we do not find that the change at issue here, i.e., the 2006 regulations, conferred jurisdiction over the underlying application on the Board, this argument is not persuasive.

of already-crowded dockets. Immigration Judges, for example, would be required to schedule and oversee matters over which they play no substantive role, because the cases would once again be on their docket. If the application is ultimately denied, the Immigration Judge is placed in the position of having to enter a further order or decision that simply sets forth information provided by others, assuming such information is actually provided to the Immigration Judge in a timely manner. There would be nothing to preclude the respondent from filing an appeal to the Board from such an order, unnecessarily adding to our pending case load, and despite the fact that we would have no review authority over aspects of that decision.

When the matters are ones over which the Board and the Immigration Judges actually do have jurisdiction, these are simply the necessary "costs" of an adjudication system. But such is not the case if we are obliged to reopen proceedings while third parties resolve matters over which we have no direct or review authority.[8] Given our lack of jurisdiction over this category of adjustment applications, and because a process exists for requesting a stay from the DHS, the administrative and practical costs of reopening weigh heavily in our discretionary analysis. Thus, we will generally decline to exercise our discretion to reopen proceedings sua sponte under such circumstances. *Matter of G-D-*, 22 I&N Dec. at 1133-34 (recognizing that sua sponte authority is "an extraordinary remedy reserved for truly exceptional circumstances"); *see also Matter of J-J-*, 21 I&N Dec. 976.

In sum, we conclude that we generally lack authority to reopen final exclusion, deportation, or removal proceedings where an alien seeks to pursue relief over which neither the Board nor the Immigration Judge has jurisdiction. In addition, we find that the stay authority we have been granted by regulation

---

[8] The "practical" concerns in *ongoing* proceedings that have not become final are fundamentally different. There can be sound reasons to continue or administratively close proceedings while matters outside the Immigration Judge's jurisdiction are resolved, often including reasons directly related to administrative efficiency and the best utilization of adjudicative resources. *See, e.g.*, *Matter of Hashmi*, 24 I&N Dec. 785 (BIA 2009) (setting forth considerations for granting a continuance when a family-based visa petition is pending before the USCIS). Further, the Attorney General and the Secretary of Homeland Security have solicited comments "on the standards for the granting of continuances to arriving aliens in removal proceedings while applications for adjustment of status are pending with USCIS." 71 Fed. Reg. at 27,589 (Supplementary Information). Thus, while we acknowledge the arguments raised surrounding the question whether proceedings can or should be continued when an arriving alien's adjustment application is pending with the USCIS, our decision in this case does not resolve that issue. Different considerations also may arise in the context of joint motions to reopen, where the parties are in agreement that the time limits should not apply to the motion to reopen and that proceedings should be reopened for agreed-upon purposes. 8 C.F.R. § 1003.2(c)(3)(iii).

does not extend to granting reopening of proceedings in order to effectively grant a "stay" of an outstanding final order of exclusion, deportation, or removal while a matter over which we lack jurisdiction is resolved. Finally, we will not generally exercise our discretion to reopen proceedings sua sponte for an arriving alien to pursue an adjustment of status application before the USCIS. To do otherwise would place an arriving alien who files an untimely motion to reopen proceedings in a more favorable position than any other alien who files an untimely motion seeking adjustment of status and does not otherwise qualify for an exception to the time limits imposed on motions to reopen.

In this case, the respondent has presented no exceptional circumstances, and her motion does not persuade us to sua sponte reopen these proceedings, which have been administratively final since December 2003, in order for her to pursue her application for adjustment before the USCIS. *Matter of J-J-*, 21 I&N Dec. 976. The respondent's motion will therefore be denied as untimely filed.

## V.

Having resolved the issues raised in the respondent's motion to reopen, we turn, as a final matter, to the DHS's motion to reopen and terminate these removal proceedings based on the USCIS's grant of lawful permanent resident status to the respondent on February 25, 2009.

As we noted earlier, it is not necessary to reopen or terminate proceedings in order to allow an alien to pursue an application for adjustment of status before the USCIS. The fact that the USCIS has, in fact, completed its adjudication of the respondent's adjustment application—despite initially rejecting that application—and granted the respondent lawful permanent status while her motion was pending with the Board merely reinforces our determination that sua sponte reopening is not generally warranted. There is no indication that the DHS attempted to execute the removal order during that period of adjudication. However, the respondent could have sought a stay of her final removal order from the DHS, if it had been necessary. *See* 8 C.F.R. §§ 241.6(a), 1241.6(a). The respondent's adjustment application has been processed as envisioned under the new regulations without resorting to reopening and "staying" the removal proceedings, and she has been granted the status for which she applied with the USCIS. Given these circumstances, reopening solely for termination of the proceedings is warranted and we will grant the DHS's motion.

**ORDER:**  The respondent's motion to reopen is denied.

**FURTHER ORDER:**   The motion of the Department of Homeland Security to reopen and terminate is granted, and these removal proceedings are terminated.