POSNER, Circuit Judge.
The Sudan is a very large region in northeastern Africa, the site of a number of ancient civilizations that flourished along the Nile. It became an independent nation in 1956 (before that it had been controlled by Britain and Egypt), but since 2011 it has accommodated two nations— the Republic of the Sudan and the Republic of South Sudan. Until 2011, when the southern half of the nation broke away to form the Republic of South Sudan, the Sudan was the largest nation in Africa.
The population of the Republic of the Sudan is almost entirely Muslim, whereas most of the population of the Republic of South Sudan practices Christianity or African traditional religion. The religious difference between the two nations is germane to this immigration case, as we’ll see.
The petitioner, Deng Arej, was born in South Sudan before it was an independent nation, and was sent as a child to live in the northern part of Sudan because his parents were afraid that if he remained in the south he’d be drafted into the south’s army as a child soldier. When relocated to the north he concealed both his Christian faith and his southern ethnicity to avoid being killed by northern soldiers. Later, fearing that he would be drafted into the northern army, he fled to Egypt. He was admitted to the United States as a refugee in 2005. Though a native of South Sudan, now as we said an independent nation, he remains a citizen of the Republic of the Sudan.
Once in the United States, Arej committed a series of assaults (one in a fight that resulted in a death, although he was not convicted of murder) and was sentenced to two years in prison. In April 2014, after he completed his prison sentence, an immigration judge ordered him removed (i.e., deported) to the Republic of the Sudan. He might have preferred to be removed to South Sudan, now that it’s an independent nation, as he is of South Sudanese origin and a Christian — but the record does not say which nation he prefers: probably, as we’ll see, neither. There have been previous removals of Sudanese immigrants, but it is unclear how many of them were removed to the northern republic and how many to the southern, and how many removed to one of the two countries moved or tried to move to the other.
In January 2015, awaiting removal more than eight months after having been ordered removed, Arej sought U.S. asylum on the ground that South Sudan (to which he may have intended to move from the Republic of the Sudan were he removed to that republic) was “increasingly volatile and dangerous” and by May 2014 on the brink of civil war. And as he wasn’t even a citizen of the country, he might be unable to obtain protection from its government. He may have thought it obvious that he shouldn’t be removed to the north either, in view of his vulnerability to persecution there, being Christian; in any event he was opposing, on plausible grounds, removal to either country.
He had missed the 90-day deadline for filing a motion to reopen the proceedings, however, which would have allowed him to petition for asylum. But he sought an exception to the deadline on the basis of changed circumstances since the issuance *667 of the removal order. A civil war in South Sudan had broken out in December 2013 and by February 2015 a South Sudanese legal scholar was quoted in evidence that Arej submitted to the Board of Immigration Appeals as reporting that 20 percent of his country’s population had been displaced and an “untold number” of them killed. Removed to the north, Arej would be in danger as a southerner, but if therefore he fled to the south, he would find himself in the midst of a civil war. He was between a rock and a hard place.
But the immigration judge denied Arej’s motion to reopen (a motion that if granted would have made it possible for him to apply for asylum in the United States), remarking that Arej “states no facts constituting changed circumstances.” He appealed to the Board of Immigration Appeals, which however dismissed his appeal perfunctorily, remarking — inaccurately — that the fact that there was a “ ‘[civil] war ... in progress [in South Sudan]’ ... does not amount to a showing that circumstances have materially changed in Sudan or South Sudan since the time of the entry of the order of removal.” That remark ignored the growing violence in the south during this period. Further ignoring evidence, the Board added that Arej had failed to present evidence that “establishes that, since the time of his ultimate removal hearing, conditions have materially changed in Sudan or South Sudan.” That was incorrect; he had presented such evidence, which we summarized above.
Arej has conceded that he qualifies as a criminal alien under 8 U.S.C. § 1252(a)(2)(C), so our review of the Board’s decision is limited to issues of law. 8 U.S.C. § 1252(a)(2)(D). But it was a serious legal error for the Board to have ignored Arej’s evidence. As we noted in Iglesias v. Mukasey, 540 F.3d 528, 531 (7th Cir. 2008), the Board cannot make a reasoned decision to deny a motion to reopen if it ignores the evidence that a petitioner presents.
Furthermore, a competent immigration service would not ignore world events. The dramatically worsening conditions in South Sudan have been widely reported, with the young nation described as “cracking apart” and United Nations officials raising concerns about genocide. See, e.g., Jeffrey Gettleman, “War Consumes South Sudan, a Young Nation Cracking Apart,” New York Times, March 4, 2017, https://nyti. ms/21HeELw. “Tens of thousands of civilians have been killed”; “every major ceasefire that has been painstakingly negotiated by African and Western officials has been violated”; and “dangerous fissures are opening up within the South Sudanese military.” Id. And time doesn’t stand still. The Board’s order dismissing Arej’s appeal from the immigration judge’s denial of his motion to reopen was issued on May 8, 2015 — almost two years ago. Considering that Arej has not yet been removed and that the order was perfunctory, the Board should consider whether he should be allowed to present evidence concerning current conditions in the two Sudans. See 8 C.F.R. § 1003.2(a).
The petition for review is therefore granted, the decision of the Board vacated, and the case remanded to the Board for further proceedings consistent with this opinion.