In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3176

RAY FULLER,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS, III, Attorney General of the United States,

*Respondent*.

On Motion for Stay of Removal and for *In forma pauperis* status in connection with a Petition for Review from the Board of Immigration Appeals.
No. A077-811-635

SUBMITTED OCTOBER 23, 2017 — DECIDED JANUARY 8, 2018

Before WOOD, *Chief Judge*, and MANION and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*.  Petitioner Ray Fuller is in the final stages of removal proceedings in which the U.S. Department of Homeland Security is seeking to have him sent back to his native Jamaica. This court has seen Fuller's case before: in 2016, we considered Fuller's petition for review from the de-

cision of the Board of Immigration Appeals to deny his applications for withholding of removal under the Immigration and Nationality Act (INA) and withholding and deferral of removal under the Convention Against Torture (CAT). See *Fuller v. Lynch*, 833 F.3d 866 (7th Cir. 2016) (*Fuller I*). We concluded that we had no jurisdiction to review the Board's characterization of Fuller's 2004 conviction for attempted criminal sexual assault as a "particularly serious crime," within the meaning of 8 U.S.C. § 1231(b)(3)(B)(ii). That label has serious consequences: it barred Fuller from withholding of removal under both the INA and CAT. Turning to Fuller's request for deferral of removal under CAT, the Board found (as had the Immigration Judge (IJ)) that Fuller had not credibly shown that he was bisexual, nor that the Jamaican government would regard him as such. Fuller urged us to revisit the evidence and to conclude otherwise, but we found that substantial evidence supported the Board's finding and that we had no power to conduct a *de novo* review of the record. One member of the panel dissented.

After our decision, Fuller returned to the Board with a motion to reopen or reconsider its ruling; he referred to new affidavits in that motion. The Board denied the new motion on February 3, 2017, and Fuller did not file a petition for review of that order. On March 2, 2017, Fuller filed a Form EOIR-26 (a notice of appeal from an IJ decision), which the Board construed as yet another motion to reopen. Fuller said in that motion that he was "ignorant, unprepared, and un-represented" at his original hearing and he asked for a chance to prove his credibility with respect to his sexual orientation. He included letters from three friends who live in Jamaica. Each writer says that he has known Fuller since childhood and believes that Fuller will be killed if he is forced to return to Jamaica.

We refer to them as Writers A, B, and C. They have requested that their names not be publicized because they fear that they will be targeted as sympathizers of gay people and harmed. The Board and this court, however, have their names.

Writer A, the first witness, describes an incident in which Fuller was shot at a house party hosted by a college friend in Ocho Rios. Writer A's statement is consistent with Fuller's written statement, but not his oral testimony. (We note that although the official language of Jamaica is Jamaican Standard English, which is easily understood in the United States, the first language of most Jamaicans is Jamaican Patois or Creole, which is not. See Alpha Omega Translations, https://alphaomegatranslations.com/foreign-language/the-two-main-languages-of-jamaica/.) Writer A also described an incident in Harbor View in which Fuller was beaten so badly that he was found on the side of the road by a passing motorist. Writer A says that he learned about the Harbor View incident through a newspaper article, which depicted it as a robbery. He does not claim first-hand knowledge about either the Ocho Rios or the Harbor View incident. The second witness, Writer B, described the same two attacks mentioned by Writer A without saying when they occurred. Writer B did say, however, that he was with Fuller at the Ocho Rios party, and that he remembered that one of Fuller's cousins had been sent to kill him. Finally, Writer C wrote that he was in the area when Fuller was shot in Ocho Rios during college, and that he saw the damage when he got there about 30 minutes after the shooting. Writer C related that he visited Fuller after he was beaten and stabbed at the bus stop in Harbor View. Writer C also described the anti-gay culture in Jamaica; he noted that there were multiple incidents in which gay men were tortured or killed, and he contended that Fuller is now a "marked man"

in Jamaica because his sexual orientation is now a matter of public record.

The Board denied Fuller's motion to reopen on March 31, 2017, because it was untimely and number-barred, and because (the Board said) it did not qualify for any exception to those rules and failed to demonstrate circumstances so exceptional that they warranted the use of the Board's *sua sponte* power to revisit a case. The Board was unimpressed by Fuller's new evidence. It mailed the March 31 order to the McHenry County Jail, where Fuller had been detained, but Fuller did not receive it. Later the Board granted Fuller's motion to reissue its decision. Fuller then filed a timely petition for review from the reissued decision.

We do not now have the merits of his new petition before us. Concerned that he may be removed at any moment, Fuller (acting *pro se*) has filed two interim motions: one to stay removal pending our consideration of the petition for review, and the other for permission to proceed *in forma pauperis*. He has this to say about his new facts:

> The new evidence was previously unavailable to the Petitioner because of deprivation of his right to counsel and did not understand [*sic*] the requirements for a withholding of removal and/or deferral of removal claim. The person(s) submitting the affidavits of support were out of touch with the Petitioner for over ten years, making it hard to get any communication going between them. Moreover, the said persons were afraid of repercussions for these letters; the

> mere existence of the letters can cause the send-
> ers to be attacked for defending the Petitioner, a
> *persona non grata* in the island of Jamaica.
>
> …
>
> The Petitioner wishes to prove that his life
> would be in mortal danger if he was to be re-
> moved to Jamaica. The Petitioner beseeches the
> court to temper justice in his case and allow him
> the opportunity to defend his case before the
> court. The DHS/ICE have already approached
> Mr. Fuller, insisting that he sign a deportation
> order, he has refused to do so but has been told
> that he faces federal charges if he continues to
> refuse to comply.

This is far from a frivolous motion: indeed, we were con-
cerned enough about these allegations to cause us to ask the
Attorney General to file a formal response to them. He has
done so. The government offers two primary responses. First,
it argues that nothing Fuller has said changes the fact that his
motion to reopen was untimely and number-barred; second,
it argues that the new evidence does not change the IJ's find-
ing that his assertion that he is bisexual was not credible. The
government adds that there is a public interest in prompt ex-
ecution of removal orders.

If Fuller's new evidence compelled the conclusion that his
removal to Jamaica would indeed be a death sentence, we
would be inclined to grant the stay of removal and recruit
counsel for him, so that this issue could be explored more
thoroughly before this court. We are loathe to think that U.S.
immigration law is so draconian that it compels a court to

send a man to certain death, just because he violated the time and number requirements for motions to reopen. We note in this connection that, while the Board's denial of a motion to reopen that presents new evidence rests on a discretionary ground and is thus to that extent unreviewable, see *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003), this court remains authorized to review constitutional claims and questions of law, including whether the Board considered all relevant evidence *before* exercising its discretion. See 8 U.S.C. § 1252(a)(2)(D); *Joseph v. Lynch*, 793 F.3d 739, 741–42 (7th Cir. 2015).

But we must also take the government's second argument into account: that the Board did consider Fuller's new evidence and was not persuaded that it would have made a difference in the IJ's credibility determination. The IJ spelled out the reasons for that ruling, and this court reviewed those reasons in its earlier opinion. See *Fuller I*, 833 F.3d at 871. While we might have given a more sympathetic reading to Fuller's new evidence, we note again that the IJ's (and the Board's) decision on a motion to reopen "is discretionary and unreviewable." *Id.* at 872. It is sobering to realize that if the Board has made the wrong call, the consequence for Fuller may be death. It is also unclear to us whether the Board took into account the effect of these proceedings on the risks Fuller will face if he is sent back to Jamaica: whatever the old evidence showed when this case first arose, it is clear on the record before this court that Fuller now identifies himself as bisexual. Given the instantaneous availability of documents on the Internet, there is no doubt that the facts revealed in these documents will become known, and Fuller's life may well be in danger. The Attorney General has the discretion to take these facts into account, even after the judicial phase of proceedings

is at an end. We hope that he refrains from acting while Fuller's case is pending before this court, and if Fuller should fail to prevail on the merits, we hope that any later action takes full account of the serious risk to life that Fuller faces.

The motion for a stay of removal is DENIED, but we GRANT Fuller's motion to proceed *in forma pauperis*.

MANION, *Circuit Judge,* concurring. A fact-bound case
such as this underscores why "the Attorney General's discre-
tionary judgment whether to grant relief … shall be conclu-
sive unless manifestly contrary to the law and an abuse of
discretion." I agree with the court's previous judgment in
*Fuller v. French*, 833 F.3d 866 as well as the decision today to
deny the motion for a stay of removal. Deference to the IJ's
finding and the Board's conclusion is important for me at
this late date because it appears that with all of the discrep-
ancies, the only clear evidence that Fuller is bisexual is be-
cause he says so. Any added risk to his life is brought on by
his careless and seemingly indiscriminate sexual behavior.
Fuller has filed a motion to reopen with affidavits reflecting
on his activities many years ago. The Board denied his mo-
tion and the current petition seeks review of that order. As
the court explains, the Board has reviewed Fuller's new evi-
dence and its denial is largely discretionary and unreviewa-
ble. Of course, there is some concern that because Fuller has
publically identified himself as bisexual, he faces danger in
Jamaica. Based on the earlier opinion as well as the dissent,
it is probable that his sexual activity had been well known
locally long ago. For example, as the opinion indicated, "he
told the IJ while married to Wood he had multiple affairs
with men and women," and he partied in the "gay-friendly
resort town of Ocho Rios." As the opinion also notes, his
family (his sisters, a cousin, and apparently his parents) have
effectively abandoned him because of his sexual activity. The
dissent also noted his testimony disclosed "at length and in
detail about his being bisexual and having had a number of
sexual relationships with both men and women beginning
when he was a pre-teen." The dissent also pointed out "an-
other wrinkle," "that homosexuals often are antipathetic to

bisexuals," citing another publication entitled, "Why Do Gays Hate Bisexuals." Even though it does not appear that he was hiding his sexual activity while in Jamaica, it is obvious he would rather be here than go back there. He committed a serious crime here, and he appears rightfully deportable. But all of that is for the Board of Immigration Appeals to decide.

One option the Board may consider would be to deport him to a country other than Jamaica, perhaps giving him an opportunity for a voluntary departure to any country he prefers. For now, we deny his motion for a stay of removal, but grant his motion to proceed in forma pauperis in his now pending petition to reopen.