In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-3176

RAY FULLER,

*Petitioner,*

*v.*

MATTHEW G. WHITAKER, Acting
Attorney General of the United
States,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals
No. A077-811-635

ARGUED NOVEMBER 1, 2018 — DECIDED JANUARY 23, 2019

Before WOOD, *Chief Judge,* and MANION and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Ray Fuller asked the Board of Immigration Appeals to exercise its authority to reopen his removal proceeding *sua sponte* so that he could present new

evidence in support of his request to defer his removal from this country under the Convention Against Torture ("CAT").[1] Fuller contends that he likely will face torture upon return to his native Jamaica because he is bisexual. The Board previously had sustained an Immigration Judge's finding that Fuller had not presented a credible case as to his alleged sexual orientation and fear of torture. In support of his motion to reopen, Fuller submitted to the Board several new letters of support from acquaintances attesting to prior incidents in which he was the victim of violence in Jamaica owing to his sexual orientation. In denying this request, the Board explained that "[Fuller's] motion does not challenge our conclusions regarding his credibility or his eligibility for deferral of removal, and we do not find that his letters of support would materially alter these findings." A.R. 3 (internal record citation omitted). Because the Board's stated rationale for disposing of Fuller's motion reflects a misapprehension of the basis for his request, and because we cannot be confident that the Board's mistake did not taint the exercise of its otherwise unreviewable discretion over the merits of the motion, we conclude that the Board committed legal error in denying his request for relief. On that basis, we grant Fuller's petition for review and remand to the Board for further proceedings.

---

[1] We recognize that when the Board acts in response to a litigant's request, it is not acting *sua sponte*. *See Shah v. Holder*, 736 F.3d 1125, 1126 (7th Cir. 2013). We shall nonetheless refer to the Board's authority to reopen a proceeding *sua sponte* in order to distinguish that power from the Board's distinct authority to entertain a one-time motion to reopen filed within 90 days of final agency action. *Compare* 8 C.F.R. § 1003.2(c)(2) with *id.* § 1003.2(a).

## I.

Our summary of the facts may be somewhat abbreviated, as this is the fourth time that Fuller's case has come before us. We refer the reader to our two prior published decisions for additional background. *See Fuller v. Lynch*, 833 F.3d 866 (7th Cir. 2016) ("*Fuller I*"); *Fuller v. Sessions*, 879 F.3d 265 (7th Cir. 2018) ("*Fuller II*").

Fuller entered the country legally on a fiancé visa in 1999 and married an American citizen the following year. In 2004, he pleaded guilty to attempted criminal sexual assault and an Illinois court ordered him to serve a term of 30 months' probation. After he later violated the terms of his probation, Fuller was re-sentenced to a prison term of four years.

Following Fuller's release from prison in 2014, the Department of Homeland Security ("DHS") initiated removal proceedings against him. The government charged, and the Board would later agree, that Fuller was removable from the United States pursuant to 8 U.S.C. § 1227(a)(1)(D)(i) because he had lost his conditional permanent resident status. (In 2004, Fuller and his wife, whom he divorced the following year, failed to appear for a mandatory interview with immigration officials, triggering the revocation of his conditional residency status.)[2] And because, as the Board would also agree, Fuller's conviction for attempted criminal sexual assault constituted a

---

[2] The government alleged that Fuller was removable on other grounds, but the Board found it unnecessary to reach these other grounds. Fuller does not contest that he is removable on the ground that he lost his status as a conditional permanent resident of the United States.

"particularly serious crime," he was disqualified from seeking withholding of removal under both the Immigration and Nationality Act and the CAT. *See* 8 U.S.C. § 1231(b)(3)(B)(ii).

Fuller instead sought deferral of his removal under the CAT, alleging that he was likely to be tortured as a bisexual were he returned to Jamaica. *See* 8 C.F.R. §§ 208.16(c)(4), 208.17(a).[3] In a hearing before the Immigration Judge ("IJ"), Fuller testified to a history of sexual relationships with both men and women beginning in his preteen years and continuing through his (by then dissolved) marriage to a U.S. citizen. Fuller also recounted a number of incidents in Jamaica in which he was physically and verbally attacked by those who perceived him to be gay; one of these incidents involved a shooting by a homophobic mob in the gay-friendly resort town of Ocho Rios. Fuller further indicated that his sisters had disowned him for his sexual orientation. In addition to his testimony, Fuller presented the IJ with seven letters from his children and friends, attesting to both his bisexuality and to the violence he had experienced in Jamaica on account of his sexual orientation.

The IJ found that Fuller's testimony was not credible; and because she disbelieved his testimony and also questioned the veracity of the letters he had submitted, the IJ concluded that

---

[3] For purposes of the CAT, torture is defined to include "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person … for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

Fuller had not established that he is bisexual and as such faces a likelihood of torture if he is forced to return to Jamaica. She consequently denied his request for relief under the CAT. A.R. 181–202. In finding that Fuller's testimony was not credible, the IJ cited discrepancies both as to certain basic facts (including the number and names of sisters, as well as confusing his sister with his mother in his testimony) and as to the details of the prior instances of violence he allegedly had experienced in Jamaica (including a ten-year discrepancy as to the timing of the Ocho Rios shooting and which of his former boyfriends was present at the incident, as recounted in his written statement versus his subsequent testimony in court). As for the supporting letters from Fuller's friends, the IJ noted that none of the authors were available to testify although two of them were former boyfriends who lived in the United States. The letters also diverged in certain respects from Fuller's testimony: one letter suggested that Fuller had been shot on multiple occasions in Jamaica, whereas Fuller had only described one shooting. And all of the letters contained the same centered, dotted signature line, which caused the IJ to doubt their provenance. A.R. 192–96. The IJ summarized:

> [Fuller's] credibility is seriously lacking in this case. He is unable to recall many of the most important details of the events that he claims … had an impact on his life, particularly with respect to his claim of being bisexual. He has failed to provide the Court with many documents that could have clarified many of these inconsistencies, such as medical records, police reports, corroborating letters of support or witnesses. The letters that he has pre-

sented to the Court are given very little weight because the Court is unable to verify their authenticity and has not had an opportunity to cross-examine or to even hear testimony from any of the makers of these statements. The respondent has given very little corroborative evidence to evaluate his claim that he is in fact bisexual and that he was in fact harmed in Jamaica on account of his sexual orientation in the past.

A.R. 195.

In 2015, the Board affirmed the denial of CAT relief to Fuller based on the IJ's adverse credibility findings. A.R. 61–62. "[Fuller] has shown no clear error in the Immigration Judge's detailed findings of fact, to include the findings that the respondent did not credibly testify and did not establish that he has ever been bisexual. The respondent's inconsistent statements and implausible explanations fully support an adverse credibility determination." A.R. 62 (internal record citation omitted).

Fuller then appealed to this court, but we denied his petition for review in a divided opinion. *Fuller I*, 833 F.3d 866. We concluded in relevant part that the IJ's adverse credibility determination, as affirmed by the Board, was supported by substantial evidence. *Id.* at 871–72. Although we acknowledged that some of the IJ's stated reasons for disbelieving Fuller were off the mark (including, for example, the citation of his marriage to a woman and multiple other prior heterosexual relationships as a reason to think he was not bisexual), others were sound. The latter included the discrepancies between his

written statement and his oral testimony as to when the Ocho Rios shooting had occurred, his confusion as to the number and names of his sisters (and mixing up his mother with his sister), and a material lie he had told government officials in 2001 in seeking permission to visit Jamaica. We were satisfied that the IJ's adverse credibility finding was amply supported in these respects. *Id.* We added that if Fuller were able to gather new evidence demonstrating that the IJ was mistaken as to his sexual orientation, he could ask the IJ to *sua sponte* reopen the proceeding. *Id.* at 872. The dissent, unpersuaded that these discrepancies cast doubt on Fuller's claims that he was bisexual and had suffered violence as a result, contended that the petition for review should have been granted. *Id.* at 872–74.

In January 2017, Fuller filed a motion asking the Board to reconsider and/or reopen the proceedings. A.R. 48–54. The principal contention that Fuller advanced in his motion was that the IJ had erred in rejecting his representation that he is bisexual and as such faces likely persecution and torture upon his return to Jamaica. Among other points, Fuller argued that he had testified without contradiction that he is bisexual and has been rejected by his family members because of his sexual orientation; that given the hostility and violence bisexual individuals experience in Jamaica, he would have no reason to falsely characterize himself as bisexual; that for the same reasons, it was difficult for him to locate gay or bisexual Jamaicans who would put themselves at risk by giving testimony that would confirm his bisexuality; that the inconsistencies and mistakes in his testimony before the IJ were due to his fear of being returned to Jamaica; and that the IJ's rationale for discrediting his testimony betrayed her own misunder-

standings about bisexuality. A.R. 50–52, 54. Fuller added that he had been able to obtain affidavits—actually, letters—from individuals who supported his claim that had not been available to him previously. A.R. 53.

The Board denied Fuller's motion in February 2017. A.R. 43. The Board noted both that the motion was untimely and that, although Fuller referenced new affidavits that were unavailable to him previously, "he has not submitted such evidence with the motion, nor has he shown that a different outcome may be warranted based on the new evidence." A.R. 43.

On receipt of the Board's order denying his motion, Fuller filed what he styled as a "Statement of Notice to Appeal (motion to reopen)." A.R. 22. In that statement, Fuller challenged the Board's declaration that he had not submitted the new evidence referred to in his motion to reopen, observing, "The new evidence was the cornerstone of my motion so there is no way that it would not be sent in with the motion. I think that this was a clerical mishap that caused this and I am now making sure the new pieces of evidence are included." A.R. 22. Fuller went on to summarize briefly his basis for asking the Board to reopen his removal proceeding (and on what grounds he was seeking deferral of removal), and concluded his statement with the following: "I have new evidence to submit to the court to help to prove my case. I pray that I will be given the chance to prove my credibility in court with the help of the new evidence, and garner a positive outcome to my situation." A.R. 22. He attached to the statement copies of the three letters referred to in his prior motion to reconsider and/or reopen.

The Board treated Fuller's "statement" as a second motion to reopen, and denied that motion. A.R. 3–4. The Board noted in the first instance that the motion was barred in both number and untimeliness, and that Fuller had not identified any applicable exception to those limits. Nor, in the Board's view, had Fuller demonstrated that the circumstances of his case were so exceptional as to warrant the exercise of the Board's authority to *sua sponte* reopen the proceedings. A.R. 3. The Board explained:

> Even accepting [Fuller's] argument that he previously submitted his proffered letters of support, we find no basis on which to alter our October 27, 2015 dismissal of his appeal or our previous denial of his motion to reopen. [Fuller's] motion does not challenge our conclusions regarding his credibility or his eligibility for deferral of removal, and we do not find that his letters of support would materially alter these findings. …

A.R. 3 (internal record citations omitted).

Fuller then filed the instant petition for review of the Board's order, along with a request that we stay his removal pending resolution of the merits of his petition. After first denying Fuller a stay, *see Fuller II*, 879 F.3d 265, we ultimately agreed to stay his removal and appointed counsel to represent him. With the benefit of briefing and argument, we now proceed to the merits of Fuller's petition for review.

## II.

We begin by addressing the limits of our jurisdiction. With exceptions not applicable here, a petitioner is limited to one motion to reopen filed within 90 days of the Board's final administrative decision. *See* 8 U.S.C. § 1229a(c)(7)(A) & (C)(i); 8 C.F.R. § 1003.2(c)(2). Fuller sought reopening long after the 90-day time limit had expired and, consequently, his only recourse was to ask the Board to exercise its authority to reopen the removal proceeding *sua sponte*, *see* 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen on its own motion any case in which it has rendered a decision."), a power the Board has said it will reserve for "exceptional situations," *In re J– J–*, 21 I. & N. Dec. 976, 984 (B.I.A. 1997); *see also In re G– D–*, 22 I. & N. Dec. 1132, 1133–34 (B.I.A. 1999). Because the governing regulation permits but does not require the Board to exercise this power and there is no law defining what situations will qualify as "exceptional," there is no meaningful standard by which to evaluate the exercise of the Board's discretion, and consequently the merits of the Board's decision to deny a motion to reopen *sua sponte* are unreviewable. *Anaya-Aguilar v. Holder*, 683 F.3d 369, 372 (7th Cir. 2012) ("*Anaya-Aguilar I*") (collecting cases); *see also Fuller II*, 879 F.3d at 268. But we do possess the authority to recognize and address constitutional transgressions and other legal errors that the Board may have committed in disposing of such a motion, *see* 8 U.S.C. § 1252(a)(2)(D); *Fuller II*, 879 F.3d at 268; *Zambrano-Reyes v. Holder*, 725 F.3d 744, 751 (7th Cir. 2013); *Anaya-Aguilar v. Holder*, 697 F.3d 1189, 1190 (7th Cir. 2012) (clarifying *Anaya-Aguilar I* on denial of rehearing), including whether Board's stated rationale for denying such a motion indicates that it

ignored evidence that the alien tendered in support of his request, *Fuller II*, 879 F.3d at 268 (citing *Joseph v. Lynch*, 793 F.3d 739, 741–42 (7th Cir. 2015)). Contrary to the government's argument, the REAL ID Act of 2005, which stripped us of the authority to review various discretionary decisions of the Board, did not alter our ability to address such legal errors. *See* § 1252(a)(2)(D); *Cevilla v. Gonzales*, 446 F.3d 658, 660 (7th Cir. 2006).[4]

Fuller charges the Board with two legal errors in disposing of his motion to reopen. He contends first that the Board misapprehended the thrust of his motion to reopen and the significance of the additional letters of support he submitted in support of the motion. The Board understood Fuller not to be challenging its conclusions as to his credibility or his eligibility for deferral of removal. But that understanding cannot be squared with the substance of his motion, which was a direct challenge to these conclusions, Fuller argues. Fuller also contends that the Board's summary rejection of his new evidence as "insufficient to materially alter" its adverse findings was so perfunctory as to preclude confirmation that the Board gave meaningful consideration to his evidence.

---

[4] At oral argument, the government's counsel suggested that because Fuller is seeking reopening in order to renew his request for relief under the CAT, and because a denial of relief under the CAT itself is reviewable by this court, *see Teneng v. Holder*, 602 F. App'x 340, 347 (7th Cir. 2015) (non-precedential decision); *Wani Site v. Holder*, 656 F.3d 590, 593 (7th Cir. 2011), section 1252(a)(2)(D) does not apply to the Board's refusal to exercise its authority to *sua sponte* reopen the proceedings. Because that contention was not raised in the government's brief, we deem it waived. *E.g., Pope v. Perdue*, 889 F.3d 410, 417 n.4 (7th Cir. 2018).

Because we agree with Fuller that the Board mischaracterized the basis for his motion, and because we can have no confidence that its error did not taint the exercise of its discretion as to the merits of the motion, we will remand the matter to the Board on that basis, without deciding whether the Board, absent that error, was obligated to say more than it did in denying Fuller's request that it reopen the removal proceeding *sua sponte*.

We should note at the outset that we regard Fuller's "Statement of Notice to Appeal (motion to reopen)," which the Board treated as a second motion to reopen *sua sponte*, simply as an effort to supplement the record with the three new letters of support that were somehow missing from Fuller's prior motion. The "Statement," as we read it, did not purport to make any new arguments in favor of reopening or even to address the Board's rationale in denying his prior motion, beyond tendering the letters that the Board had said were missing from Fuller's prior submission. Certainly it was within the Board's authority to characterize Fuller's "Statement" as a second motion to reopen; we do not mean to suggest otherwise. But, in determining whether the Board committed any legal error, we shall evaluate the Board's order disposing of that second motion in light of the arguments Fuller advanced both in his "Statement" and in his first motion to reopen, which were of one piece.

The Board said in its order that Fuller was not challenging its prior conclusions regarding his credibility or his eligibility for deferral of removal; but that declaration cannot be reconciled with either the letter or the spirit of Fuller's request for relief. Nowhere in either his motion to reopen or in his follow-

up "Statement" did Fuller purport to forgo a challenge to the IJ's finding (as sustained by the Board) that he was not credible as to his sexual orientation and history of persecution in Jamaica and that, consequently, he could not claim eligibility for deferral of removal under the CAT as a bisexual who was likely to be tortured. Indeed, considering that the Board's 2015 order had deemed Fuller ineligible for deferral of removal on the strength of the IJ's finding that he was not credible as to his purported sexual orientation, it would be surprising if Fuller's motion did *not* challenge the Board's conclusions as to his credibility and, in turn, his eligibility for deferral of removal. It is true that Fuller made statements in his motion to reopen to the effect that the IJ's adverse credibility determination "cannot and does not preclude him from being a bisexual" and "does not change the fact that [t]he Respondent is bisexual." A.R. 51. But such statements cannot reasonably be construed as accepting, even for the sake of argument, the IJ's credibility finding. The entire thrust of the motion to reopen was that Fuller *is*, in fact, bisexual and *has* in fact, experienced violence in Jamaica as a result of his sexual orientation; that the IJ's rationale in discrediting him on these points was suspect; and that the new letters of support tendered in support of his request to reopen would eliminate any doubt as to the likelihood that he will be tortured if forced to return to Jamaica. If Fuller did not say so expressly, it was nonetheless clear from the substance of his arguments that he meant to challenge the adverse credibility determination and the resulting finding that he had no basis on which to seek deferral of removal. *See* A.R. 51 ("The pertinent facts should be that [Fuller] testified without contradiction that he [is] bisexual, [and] he was rejected by his

family because of this."); A.R. 54 ("The Immigration Judge's assertion that [Fuller] was not in danger if removed to Jamaica is clearly a decision made with the lack of in-depth investigation by the fact-finders in this case."). And, indeed, Fuller ultimately *did* say this expressly in his "Statement": "I have new evidence to submit to the court to help to prove my case. I pray that I will be given the chance to prove my credibility in court with the help of the new evidence … ." A.R. 22.

So the Board's understanding of Fuller's motion to reopen—and of what challenges he was purportedly forgoing—was erroneous. And to the extent that misunderstanding necessarily affected how the Board exercised its discretion as to the merits of his motion, it amounts to a legal error that entitles him to relief. We have repeatedly said that the Board commits a legal error within our jurisdiction to address when it ignores, misapplies, or fails to meaningfully consider the evidence an alien has submitted in support of his motion to reopen *sua sponte. See Arej v. Sessions*, 852 F.3d 665, 667 (7th Cir. 2017); *Ni v. Holder*, 715 F.3d 620, 630 (7th Cir. 2013); *Moosa v. Holder*, 644 F.3d 380, 386 (7th Cir. 2011). Contrary to the government's suggestion, our ability to recognize such an error is not dependent on the particular reasons why an alien is asking the Board to exercise its *sua sponte* authority, be it a subsequent change in the law, *see In re G– D–, supra*, 22 I. & N. Dec. at 1135, or (as here) the availability of new evidence supporting the alien's claim for relief. When the Board mischaracterizes the evidence tendered or misapprehends the purpose for which it is offered, it has not complied with its duty to recognize and consider the basis on which the alien has

asked the Board to exercise its regulatory authority to reopen the proceedings *sua sponte*. *See Arej*, 852 F.3d at 667.

We acknowledge that the Board, after stating that Fuller was not challenging its findings as to his credibility and eligibility for deferral of removal, added that "we do not find that his letters of support would materially alter these findings,"(A.R. 3); but that addition does not convince us that we should deny Fuller's petition for review. Having misapprehended or mischaracterized what findings Fuller was or was not challenging in his motion to reopen, we cannot be confident that the Board's additional half-sentence as to the import of Fuller's new evidence represents an independent and well-considered alternative ground for the Board's judgment. We might have more assurance in that regard had the Board said something more about the letters of support and why the Board did not think they would materially alter its assessment of whether he is entitled to deferral of removal. But the Board's failure to elaborate on this point leaves us with no assurance that the Board's exercise of discretion was unaffected by its error in appreciating the purpose of Fuller's new evidence. To be clear, our point is not that the Board must say enough to convince us that the Board exercised its discretion "correctly" on Fuller's motion to reopen; the merits of its ruling are of course beyond the limited scope of our review. But in the immediate wake of a grave mischaracterization of the basis for Fuller's motion, the Board's additional boilerplate observation that Fuller's new letters would not materially alter its prior adverse findings cannot eradicate doubt as to whether the Board actually considered Fuller's evidence and understood what he was arguing based on that evidence. Wholly apart

from the question of how much the Board was obligated in the first instance to say in disposing of Fuller's motion, the glaring error in what it *did* say suggests it may never have given meaningful consideration to Fuller's evidence. The Board's order as written leaves us in the same position we would be if its stated rationale indicated that it had altogether ignored the evidence and arguments Fuller put before it. *See Joseph*, 793 F.3d at 741–42; *Kiorkis v. Holder*, 634 F.3d 924, 928 (7th Cir. 2011); *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008).

The merits of Fuller's case for the *sua sponte* reopening of his removal proceeding are for the Board and the Board alone to judge. Nothing in our opinion should be construed as a signal that we believe Fuller is entitled to reopening; our views on that question are, in any event, irrelevant. Suffice it to say that the Board in this case plainly misapprehended the basis for Fuller's motion and then dispensed with the merits of the motion in a perfunctory half-sentence, giving us no assurance that it genuinely exercised its discretion as to what Fuller was actually arguing. The Board's legal error compels us to return the matter to the Board for reconsideration.

## III.

We GRANT the petition for review and REMAND the case to the Board for further proceedings consistent with this opinion.

MANION, *Circuit Judge*, dissenting. The court's opinion admirably attempts to toe the thin line between reviewing a decision of the Board of Immigration Appeals to ensure it exercised its discretion and reviewing the Board's exercise of discretion itself. But it strays from the former into the latter. Therefore, I respectfully dissent.

**I.**

An immigration judge (IJ) found Ray Fuller lacked credibility and denied him relief under the Convention Against Torture. The Board affirmed the decision, concluding Fuller failed to show clear error concerning the IJ's credibility determination. A.R. 62 ("[Fuller's] inconsistent statements and implausible explanations fully support an adverse credibility determination."). We denied Fuller's petition for review. *See Fuller v. Lynch (Fuller I)*, 833 F.3d 866, 872 (7th Cir. 2016). In accord with the deferential standard of review we apply in these cases, we too concluded there was sufficient evidence to support the IJ's credibility determination. Specifically, we considered "Fuller's inability to recall significant details" of his alleged shooting (such as the decade in which it occurred), his confusion concerning his sisters and his mother, the suspiciousness of his letters of support, and his lie on his 2001 immigration application. *Id.* at 869–71.

Fuller then asked the Board to exercise its *sua sponte* authority to reopen his removal proceedings, claiming he had attached new evidence to the motion. *See* 8 C.F.R. § 1003.2(a). The Board declined, noting Fuller had not attached any new evidence to his motion. Fuller made another motion, this time definitely attaching three new letters in support of his claims. The Board declined again. The critical sentence of the Board's second decision is as follows: "The respondent's mo-

tion does not challenge our conclusions regarding his credibility or his eligibility for deferral of removal, and we do not find that his letters of support would materially alter these findings." A.R. 3 (internal record citations omitted). Fuller petitions us again.

## II.

Appellate review of the Board's decisions concerning its *sua sponte* authority is severely limited. We have jurisdiction only to review for legal or constitutional errors. *Anaya-Aguilar v. Holder*, 697 F.3d 1189, 1190 (7th Cir. 2012); *see also Arej v. Sessions*, 852 F.3d 665, 668 (7th Cir. 2017) (Sykes, J., concurring in the judgment) ("[W]e lack jurisdiction to review how the [Board] evaluated and weighed [the petitioner's] evidence or to test its decision for abuse of discretion; we may review its decision only for errors of law and constitutional infirmities."). We have defined "legal error" to include the Board's failure "to exercise discretion at all by completely ignoring an argument." *Iglesias v. Mukasey*, 540 F.3d 528, 530–31 (7th Cir. 2008).

And that is the legal error the court finds here. The court grants Fuller's petition because of the Board's statement that Fuller was not challenging the Board's "conclusions regarding his credibility or his eligibility for deferral." The court calls this "a grave mischaracterization" that "cannot be reconciled with either the letter or the spirit of Fuller's request for relief." Majority Op. at 12, 15. I disagree.

First, Fuller's second motion[1] did not clearly challenge the Board's conclusions. Fuller's *pro se* motion (his "State-

---

[1] The court treats Fuller's first and second motions to reopen as "of one piece." Majority Op. at 12. But the court accepts the Board was well

ment") contains three paragraphs. In the first paragraph, Fuller asserts he attached the letters to the first motion and states there must have been a clerical error. The second paragraph reiterates what he has said all along in these proceedings (he says he is bisexual, that he has experienced violence in Jamaica, and that he will experience more if he returns) and asks the Board to overturn the judgment in his case. The final paragraph asks for an opportunity "to present [his] case to the immigration court" and to "be given the chance to prove [his] credibility in court with the help of the new evidence." A.R. 22. Apart from that last statement, Fuller never mentions his credibility and never directly addresses his credibility issues, which were the basis for the denial of his petition for deferral of removal. For instance, he does not explain why his assertions should be trusted when he could not keep straight whether he got shot in the 1980s or the 1990s or when he has previously lied on an immigration application. Neither does the restatement of his allegations necessarily amount to a "challenge" to the Board's earlier determinations. The IJ found Fuller did not testify credibly, and the Board concluded there was no clear error in that finding. The Board was not required to treat Fuller's restatement of a summary of his own testimony as a "challenge" to that conclusion. *Cf. Anderson v. Hardman*, 241 F.3d 544, 545–46 (7th Cir. 2001) (dismissing a *pro se* appeal where the appellant "offer[ed] no articulable basis for disturbing

---

within its power to treat Fuller's second filing as an independent motion. *Id.* If it was acceptable for the Board to do that, then we should not make it unacceptable by treating the two as one for the purposes of our review. Therefore, I treat the second motion on its own.

the district court's judgment" and "simply repeat[ed] certain allegations of his complaint and cite[d] one irrelevant case").

So Fuller's motion is ambiguous about whether it "challenges" the Board's determinations, and this brings me to my next point: we should not be in the business of interpreting "the spirit" of motions made to the Board. The resolution of ambiguities is a power that should lie with the entity exercising discretion, not the one exercising an extremely limited power of review. We are, after all, only concerned with whether the Board completely ignored Fuller's motion, not with how the Board interpreted it. *See Joseph v. Lynch*, 793 F.3d 739, 742 (7th Cir. 2015) ("Joseph's disagreement with the Board about the *significance* of his and his brother's statements is simply an argument about how those statements were weighed. It does not clear the jurisdictional bar … .").[2] And the Board's determination that Fuller's motion did not challenge the Board's earlier conclusions is a reasonable interpretation of the ambiguous *pro se* motion.[3] Accordingly, there has been no showing the Board *completely ignored* Fuller's motion or arguments.

---

[2] The majority in *Arej v. Sessions* conflated these considerations and held the Board ignored the petitioner's evidence because the Board reached a conclusion the majority deemed incorrect. 852 F.3d at 667 (majority opinion). We should not allow that faulty rational to continue.

[3] If the Board's decision showed an absolute lack of understanding concerning the contents of the motion, it would be appropriate for this court to question whether the Board actually considered the motion. But I conclude that is not what happened here.

### III.

The court returns this case to the Board for it to exercise its discretion in resolving the merits—the court acknowledges it has no authority to direct *how* the Board should exercise that discretion. I completely agree with that description of our power. However, as I conclude the Board has already demonstrated it exercised its discretion in resolving Fuller's motion, I respectfully dissent.