In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1669

ALEJANDRO SALAZAR-MARROQUIN,

*Petitioner,*

*v.*

WILLIAM P. BARR,
Attorney General of the United States,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A089-283-631.

ARGUED DECEMBER 18, 2019 — DECIDED AUGUST 13, 2020

Before HAMILTON, BRENNAN, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Under immigration law, it can make a big difference whether a non-citizen entered the United States legally or not. For petitioner Alejandro Salazar-Marroquin and his family, the difference is whether his marriage to a United States citizen makes him at least legally eli-

gible for an adjustment of status that might allow him to remain in the United States lawfully. 8 U.S.C. § 1255(a). If he is not eligible and is removed after having failed to appear for his removal hearing in 2011, he will be inadmissible to the United States for five years after his removal. 8 U.S.C. § 1182(a)(6)(B).

The question of how petitioner entered the United States can be reached, however, only if petitioner can overcome several procedural obstacles, so we need to review the progress of his case in some detail. We conclude that under *Fuller v. Whitaker*, 914 F.3d 514 (7th Cir. 2019), petitioner is entitled to have the Board of Immigration Appeals take a fresh look at his motion to have his case reopened based on evidence that he entered legally, despite the generally applicable time-and-number limits on motions to reopen.

I.  *Factual and Procedural Background*

Petitioner Salazar-Marroquin is a Mexican citizen. He says that he entered the United States with a B-2 visitor's visa in 2000 when he was 16 years old, but he stayed despite the expiration of his visa. In 2010 he was arrested for driving without a license and was referred to the Department of Homeland Security.

The Department personally served petitioner with a Notice to Appear charging him as removable as an alien present in the United States without having been properly admitted. See 8 U.S.C. § 1182(a)(6)(A)(i). The Notice to Appear contained what was at the time standard boilerplate language. Instead of specifying a time and date for his removal hearing, it said only "to be set." See *Ortiz-Santiago v. Barr*, 924 F.3d 956,

958 (7th Cir. 2019) (describing process by which time-and-date information is provided later in a Notice of Hearing).

Petitioner then received two Notices of Hearing, causing confusion, he says, that led him to miss his removal hearing. The first notice, sent in August 2010, a month after the Notice to Appear, set his removal hearing for January 10, 2012, more than a year later. The second, sent in January 2011, re-set the hearing for an earlier date, February 15, 2011, only five weeks after the notice.

Petitioner failed to show up at the rescheduled hearing. He was ordered removed in absentia. The immigration judge found that the Department had established the allegations in the Notice to Appear—that Salazar-Marroquin was an alien in the country *without having been admitted*. The finding was based on information contained in a document called the "Record of Deportable/Inadmissible Alien." The judge ordered petitioner removed to Mexico based on this charge.

Petitioner filed two motions to reopen the proceedings. In the first, filed in 2011 just days after the removal hearing and order, he asserted that he had been confused about his hearing date owing to the two notices. The judge denied the motion, finding that petitioner had not shown that his failure to appear was due to lack of notice or "exceptional circumstances" as defined in 8 U.S.C. § 1229a(b)(7) & (e)(1). The Board denied his appeal.

In his second motion to reopen, filed in 2012 directly with the Board, petitioner argued that he may be eligible for prosecutorial discretion based on an unspecified memorandum recently issued by the Department—presumably a reference

to the Deferred Action for Childhood Arrivals (DACA) program. This too was denied.

In 2018, and represented by new counsel, petitioner filed the motion that is the subject of this petition for judicial review. This was his third motion to reopen his removal proceedings and to vacate his removal order. For the first time, he asserted that he had been charged incorrectly back in 2010 as removable because, instead of entering the country illegally, he had been admitted on a B-2 visa and had never left. He supplemented his motion with an affidavit and copies of a visa and his passport bearing a stamp from U.S. immigration authorities showing that he entered the country legally in Laredo, Texas, on August 11, 2000.

Because he was not removable as charged, petitioner argued, his ten years' continuous presence here should allow him to seek cancellation of removal if the proceedings were terminated and a new Notice to Appear were issued. He also asserted that he should be allowed to seek adjustment of status based on his recent marriage to a U.S. citizen. See 8 U.S.C. § 1255(a).

Petitioner gave two reasons why his removal proceedings should be reopened. First, he said exceptional circumstances caused his failure to appear, and time-and-number limits on the motion should be equitably tolled. See 8 U.S.C. § 1229a(b)(5)(C)(i) & (c)(7). He does not renew that argument on judicial review.

Second, he argued that a miscarriage of justice would result "since [he] was never removable as charged and since he is prima facie eligible for adjustment of status." As for this latter basis, he argued that exceptional circumstances justified

reopening the proceedings based on the Board's *sua sponte* authority. The Department opposed the motion, arguing that petitioner had exceeded the time-and-number limits on motions to reopen and did not merit discretionary relief.[1]

A month later, Salazar-Marroquin filed a supplemental motion to terminate his removal proceedings based on *Pereira v. Sessions*, 138 S. Ct. 2105, 2113–14 (2018), which held that a Notice to Appear lacking the specific time or place of the removal proceedings was deficient under 8 U.S.C. § 1229(a)(1)(G) and thus did not trigger the "stop-time" rule under 8 U.S.C. § 1229b(d)(1). Petitioner's 2010 Notice to Appear was similarly deficient. He argued that the immigration judge thus lacked jurisdiction over his proceedings, which should be terminated. The Department opposed the motion, asserting that it was time-barred and based on a faulty interpretation of *Pereira*.

In a brief order, the Board denied petitioner's 2018 motion to reopen. Characterizing the motion as a request "to have the proceedings reopened in order to pursue adjustment of status based upon a petition filed … by his [wife]," the Board rejected the motion because it was untimely and did not meet

---

[1] Describing the motion as seeking a "*sua sponte*" reopening is a common but unfortunate misnomer and even an oxymoron. Board action on a motion would not be *sua sponte*. Strictly speaking, such a motion asks the Board to waive the time-and-number limits on motions to reopen in 8 U.S.C. § 1229a(c)(7)(A) & (C)(i), and 8 C.F.R. § 1003.2(c)(2). See *Malukas v. Barr*, 940 F.3d 968, 969 (7th Cir. 2019) (phrase "motion to reopen *sua sponte*" is an "oxymoron"). But the phrase distinguishes the Board's inherent power to reopen removal proceedings at any time from a party's right to file one motion to reopen within 90 days of a final agency determination. See *Fuller v. Whitaker*, 914 F.3d 514, 515 n.1 (7th Cir. 2019) (recognizing distinction).

any of the time-limit exceptions. The Board added that it declined to exercise its *sua sponte* authority to grant the "motion to pursue adjustment of status" because petitioner's situation was not exceptional and the Board lacked the "power to grant equitable remedies or to confer general humanitarian relief on aliens." In a footnote, the Board denied the motion to terminate the removal proceedings, distinguishing *Pereira* on the ground that petitioner had eventually received adequate notice of the time and place of the hearing.

II. *Analysis*

On judicial review, petitioner Salazar-Marroquin offers two reasons for reopening his case. Citing *Pereira*, he seeks to terminate or reopen the proceedings based on the absence of a time and place in his Notice to Appear. Second, he argues that the Board completely missed the point of his new evidence that he actually entered the United States lawfully, with a visa, back in 2000. We reject the first reason but agree with petitioner on the second.

A. *The Pereira Issue*

Petitioner did not raise the *Pereira* issue until long after the proceedings had produced a removal order and the denial of two motions to reopen. He thus forfeited the *Pereira* error—the absence of a specific time and place for his hearing in his Notice to Appear. We have held that, as with other violations of claim-processing rules, a defective Notice to Appear "may be grounds for dismissal of the case," but a party's failure to timely raise it may result in forfeiture. *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019).

Petitioner could have raised this argument earlier, relying on what we have called the "clear statutory text" and the

Third Circuit's earlier disagreement with the effect of a non-compliant Notice to Appear. See *id.* at 964, citing *Orozco-Velasquez v. U.S. Att'y Gen.*, 817 F.3d 78, 81–83 (3d Cir. 2016). This failure is not excused because petitioner cannot show that he was prejudiced by the defective Notice to Appear. He admits that he received the later Notices of Hearing, which both contained the times and place of his scheduled and rescheduled hearing. See *Ortiz-Santiago*, 924 F.3d at 964–65 (finding no prejudice); *Vyloha v. Barr*, 929 F.3d 812, 817 (7th Cir. 2019) (same where petitioner, after having received notice, failed to show up at second hearing where he was ordered removed in absentia).

B.  *Petitioner's Original Entry into the United States*

We turn to petitioner's second reason for reopening his case: that he had in fact entered the United States legally back in 2000. In cases involving the denial of a motion to waive the time-and-number limits for motions to reopen (i.e., a motion to reopen "*sua sponte*"), our jurisdiction is very narrow. The Board has said that it reserves the power to reopen any case on its own motion for "exceptional situations." *In re J– J–*, 21 I. & N. Dec. 976, 984 (B.I.A. 1997). Because no law defines what situations will qualify as "exceptional," we have held that the merits of these denials are unreviewable. *Fuller v. Whitaker*, 914 F.3d 514, 519 (7th Cir. 2019).

We held in *Fuller*, however, that we retain the authority to assess both constitutional issues and "legal errors the Board may have committed in disposing of such a motion." *Id.*, citing 8 U.S.C. § 1252(a)(2)(D). Such legal errors include "whether [the] Board's stated rationale for denying such a motion indicates that it ignored evidence that the alien tendered in support of his request." *Id.*; accord, *Arej v. Sessions*,

852 F.3d 665, 667 (7th Cir. 2017) (granting petition where Board ignored evidence that supported motion to reopen on grounds of changed circumstances—a civil war in petitioner's home country of South Sudan); *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) (finding jurisdiction to review denial of motion to reopen where Board completely ignored evidence that supported motion, but denying relief where legal error was harmless).

Our narrow jurisdiction to review the Board's reasons for denying such motions is controversial. It also presents a proverbially slippery slope. The line between, on one hand, permissibly finding that the Board ignored evidence or misunderstood the basis of a motion to reopen, and, on the other hand, impermissibly reviewing the merits of the Board's exercise of discretion is a fine one. The Board's understandable tendency to deny motions to reopen in short, terse orders makes that line even finer.

In *Fuller*, for instance, a Jamaican citizen filed an untimely motion to reopen his removal proceedings. We found that the Board had mischaracterized the basis for the motion and the significance of additional letters of support he submitted with that motion. We found that remand was warranted because the Board had misunderstood that petitioner not to be challenging its conclusions about his credibility about his sexual orientation, his history of persecution in Jamaica, or his eligibility for deferral of removal. In fact, we emphasized, the "substance of his motion" was a "direct challenge to these conclusions." *Fuller*, 914 F.3d at 520.

We revisited *Fuller*'s rationale in *Malukas v. Barr*, 940 F.3d 968 (7th Cir. 2019). We noted the Board's "unfettered discre-

tion" to reopen removal proceedings *sua sponte*, and we observed that our approach in *Fuller* conflicted with rulings from other circuits. See *id.* at 970, citing *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1286 n.7 (11th Cir. 2016) (review governed by Administrative Procedure Act, not 8 U.S.C. § 1252(a)(2)(D), so courts may review, at most, only for constitutional errors), and *Rais v. Holder*, 768 F.3d 453, 460 (6th Cir. 2014). We also noted that two cases pending before the Supreme Court this term might shed additional light on the issue. Even under the *Fuller* approach, however, we found that Malukas was not entitled to relief because the Board's explanation for its decision not to reopen *sua sponte* did not contain or imply any legal error. *Id.* at 971.

In this case, on the other hand, we agree with petitioner that the Board misapprehended the principal basis for his motion to reopen: that contrary to the charge set forth in the Notice to Appear and his removal order, he in fact entered the country legally. As a result, petitioner argued, (1) he was wrongfully charged and ordered removed, so his removal proceedings should be terminated, and (2) he should be eligible for adjustment of status. In its denial, however, the Board addressed only his potential adjustment of status. There was no reference to the fundamental question whether he had entered the country legally, so that he was wrongfully charged and could be eligible for cancellation of removal.

The problem here was not a failure to offer any explanation. The problem was that the "glaring error in what [the Board] *did* say suggests it may never have given meaningful consideration" to his alleged legal entry. *Fuller*, 914 F.3d at 522. The Board need not itemize each piece of evidence offered, see *Ji Cheng Ni v. Holder*, 715 F.3d 620, 625 (7th Cir.

2013), but it may not "simply disregard relevant evidence." *Id.*; see also *Arej v. Sessions*, 852 F.3d 665, 667 (7th Cir. 2017).

The Board's silence on petitioner's asserted legal entry brings this case within the narrow confines of *Fuller*. The Board has yet to adjudicate his argument that he was charged incorrectly, which requires in turn, he argues, that his proceedings be terminated. See *In re R– D–*, 24 I. & N. Dec. 221, 225–26 (B.I.A. 2007) (affirming termination where alien had been charged incorrectly as a person present in the United States illegally, as distinct from an arriving alien seeking entry). If petitioner is correct, it appears he may be eligible to seek cancellation of removal or perhaps some other relief as a spouse of a U.S. citizen.

*       *       *

In finding that the Board misapprehended the basis for petitioner's motion, we say nothing of the merits of his case for the *sua sponte* reopening of his removal proceedings. But in the first instance the Board should consider whether petitioner's alleged legal entry and his supporting evidence merit reopening of his removal proceedings. We GRANT the petition for review and REMAND the case to the Board for further proceedings consistent with this opinion.

SCUDDER, *Circuit Judge*, with whom BRENNAN, *Circuit Judge*, joins, concurring. The majority opinion, which I join in full, reflects a faithful application of our decision in *Fuller v. Whitaker*, 914 F.3d 514 (7th Cir. 2019). I write separately only to emphasize my view that our full court should revisit *Fuller*.

The Board of Immigration Appeals has expansive discretion to deny a motion to reopen removal proceedings *sua sponte* and only grants such relief in "exceptional" circumstances. *Anaya-Aguilar v. Holder*, 683 F.3d 369, 372–73 (7th Cir. 2012). The Supreme Court recently held that a request for equitable tolling in similar circumstances is reviewable as an application of a legal standard to settled facts. See *Guerrero-Lasprilla v. Barr*, 140 S.Ct. 1062, 1068 (2020). But there is no such legal standard to apply in this case, nor was there one in *Fuller*. The Board's broad discretion has the consequence of precluding judicial review. See *Anaya-Aguilar*, 683 F.3d at 372–73.

What concerns me too is the very practical. *Fuller* (and today's decision) risks imposing an opinion-writing requirement on the Board—a mandate that the Board address every argument advanced by a non-citizen petitioner to avoid a "legal error." That outcome stands in tension with the Board's vast discretion, which should include the ability to summarily consider and dismiss all arguments without explanation, as our court routinely does in many appeals. See *Malukas v. Barr*, 940 F.3d 968, 970–71 (7th Cir. 2019).